165 P.3d 61 (2007)
STATE of Washington, Respondent,
v.
Marquis Antez RAMIREZ, Appellant.
No. 35158-7-II.
Court of Appeals of Washington, Division 2.
August 21, 2007.
*62 Michael C. Kinnie, Attorney at Law, Vancouver, WA, for Respondent.
John A. Hays, Attorney at Law, Longview, WA, for Appellant.
HUNT, J.
¶ 1 Marquis Ramirez appeals the trial court's revocation of his Special Sex Offender Sentencing Alternative (SSOSA)[1] and imposition of sentence for first degree child rape. *63 Relying on RCW 13.04.030(1)(e)(v), effective July 24, 2005, and RCW 9.94A.670(4), respectively, Ramirez argues that (1) the superior court adult criminal division lacked subject matter jurisdiction to accept his guilty plea and to sentence him because he was less than 16 years old when he committed the rape; (2) therefore, the trial court should have allowed him to withdraw his guilty plea; and (3) the trial court abused its discretion in failing to give great weight to the victims' mother's opinion about whether to revoke his SSOSA.
¶ 2 Holding that the statutes on which Ramirez relies do not apply, we affirm.

FACTS

I. Special Sex Offender Sentencing Alternative
¶ 3 On October 17, 2002, the State charged 16-year old Ramirez[2] as an adult with four counts of first degree child rape[3] against two victims who were brothers, committed between January 1, 1998, and September 1, 2002, when he was between 11 and 15 years old. The State filed charges against Ramirez under former RCW 13.04.030(1)(e)(v) (1998) ("automatic decline statute"), which provided that the adult court had jurisdiction over juveniles sixteen or seventeen years old who allegedly committed first degree child rape. On December 4, 2002, under a plea agreement, the State dropped three of the four charges and filed an amended information charging only one count of first degree child rape of both victims. Ramirez pleaded guilty to this amended information in adult court.

A. SSOSA Imposition
¶ 4 On March 11, 2003, the adult court sentenced Ramirez to 160 months confinement, which it suspended when it imposed a SSOSA. The SSOSA required Ramirez (1) to spend 180 days in jail; (2) to enter into, to cooperate with, to attend fully, and to complete successfully three years of a sex offender treatment program; (3) to report to a community correction officer (CCO); (4) to receive permission from the Department of Corrections for residence location, living arrangements, and employment location and arrangements; (5) not to violate any criminal laws; (6) not to possess, to use, or to deliver drugs prohibited by the Uniform Controlled Substances Act; (7) not to possess or to use any pornographic material or equipment; and (8) not to enter into or to frequent business establishments that cater to minor children, such as a mall, without adult accompaniment.

B. SSOSA Revocation
¶ 5 On August 5, 2005, the State moved to modify and/or to revoke Ramirez's SSOSA because he had committed four violations: (1) failing to report for a day-reporting check-in appointment, (2) failing to maintain employment by failing to report to work, (3) failing to attend scheduled treatment group sessions and failing to notify the treatment provider of his absence, and (4) using controlled substances. The trial court did not revoke Ramirez's SSOSA at this time. Instead it punished him for violating his SSOSA by sentencing him to 120 days in jail.
¶ 6 On December 21, 2005, the State again moved to revoke Ramirez's SSOSA because he subsequently had violated its terms. This time the State alleged ten violations: (1) failing to report as directed for a chemical dependency screening appointment, (2) failing to participate in chemical dependency treatment, (3) failing to report for a day-reporting check-in appointment, (4) failing to attend scheduled sex-offender group treatment on November 22, 2005, (5) failing to attend scheduled sex-offender group treatment group on December 13, 2005, (6) using controlled substances, (7) entering a mall, (8) attending a strip show, (9) possessing pornography, and (10) failing to pay at least $20 per month toward his legal financial obligations.
*64 ¶ 7 On July 11, 2006, the trial court held a hearing on the State's December 21, 2005 motion to determine whether to revoke Ramirez's SSOSA. CCO Anthony Shaver testified that (1) Ramirez used a controlled substance, as evidenced by an urinalysis test; (2) Ramirez's treatment providers informed him (Shaver) that Ramirez had failed to report for chemical dependency appointments and sex offender treatment group; (3) Ramirez's work supervisor told him (Shaver) that Ramirez had failed to report to work; (4) Ramirez admitted during a polygraph examination that he had gone to the mall unaccompanied by an adult; (5) after reviewing the payment records, he (Shaver) discovered that Ramirez had not made a financial payment since November 9, 2004; and (6) Ramirez failed to comply with basic reporting requirements.
¶ 8 Doctor Daniel J. Baker testified that Sterling Laboratories had performed Ramirez's urinalysis test and had found codeine and a marijuana metabolite present in his urine sample. CCO Michael Bacon testified that when he arrested Ramirez for violating his SSOSA, he found pictures of a naked woman's breasts on Ramirez's mobile phone. Helen Scott, Ramirez's mother, testified that she took Ramirez's pay checks and that she did not pay all his court-ordered payments.
¶ 9 Shaver, Pat Connell and Scott Alan Senn, two of Ramirez's treatment providers, and Tiffany Merrill, the victims' mother, testified on Ramirez's behalf that they did not believe revoking Ramirez's SSOSA was the appropriate sanction. But Shaver also testified that he was worried about his department's liability if Ramirez remained on the SSOSA. And although Connell and Senn testified that they did not believe the trial court should revoke Ramirez's SSOSA, they believed that a jail-term was the appropriate punishment for Ramirez's SSOSA violations.
¶ 10 The trial court made the following oral findings on the record: Ramirez (1) failed to enter into and to complete a drug treatment program; (2) failed to maintain current attendance with his sexual deviancy treatment program; (3) used a controlled substance (codeine and marijuana), as proven by laboratory testing; (4) was released from jail in late October, and immediately began exhibiting risk factors, for which he had been previously penalized in July, thus demonstrating that his previous incarceration had no lasting or meaningful effect; and (5) possessed a picture of a nude female. The trial court further found, "When you add together all of these risk factors, it's an intolerable risk to be placed back into the community. The community is entitled under the law of protection." Report of Proceedings at 284.
¶ 11 In its written order, the trial court found that Ramirez had committed the State's alleged violations 1-7 and 10, had pictures of nude women on his mobile phone (additional risk factors), and had begun re-offending immediately after his release from an earlier confinement sanction for four previous SSOSA violations. The trial court revoked Ramirez's SSOSA, and sentenced him to 123 months confinement.

II. 2005 Legislative Amendment to Juvenile Automatic Decline Statute
¶ 12 On March 11, 2004, our Supreme Court held that former RCW 13.04.030(1)(e)(v)[4] "unambiguously refers to [the offender's] age at the time of the proceedings." State v. Salavea, 151 Wash.2d 133, 144, 86 P.3d 125 (2004). In so holding, the Court reaffirmed its prior holdings[5] that *65 the 1998 automatic decline statute applied to juveniles 16 or 17 years old when the State charged them with first degree child rape and, therefore, the adult court, not the juvenile court, had jurisdiction. Id.
¶ 13 During the 2005 Regular Legislative Session, the Legislature passed and the Governor signed House Bill 2064, amending RCW 13.04.030(1)(e)(v) to read: "The juvenile is sixteen or seventeen years old on the date the alleged offense is committed. . . ." RCW 13.04.030(1)(e)(v) (emphasis added). This amendment changed the automatic juvenile court decline triggering event, from the juvenile's age at the time of the criminal proceedings (former versions) to the juvenile's age at the time he committed the offense (current version). As a result, under the 2005 amended statute, the adult criminal court now has exclusive original jurisdiction over juvenile offenders aged 16 or 17 when they commit specific offenses, including, as here, first degree child rape. Laws of 2005, ch. 290, § 1.

III. Motion To Withdraw Guilty Plea
¶ 14 On April 24, 2006, Ramirez moved to withdraw his adult court guilty plea to one count of first degree child rape. In the alternative, he moved for relief from judgment under Criminal Rule (CrR) 7.8(b)(4) or (5).[6]
¶ 15 On May 23, the trial court heard arguments on Ramirez's motion. He argued that (1) the version of the automatic decline statute that applied to him was ambiguous, and (2) the 2005 legislative amendment was merely a clarifying amendment, and, therefore, should apply retroactively such that the juvenile court retained jurisdiction over him because he was not yet 16 when he committed the charged crime. The State countered that there was no such legislative history for the 2005 amendment and, therefore, the trial court could not apply the 2005 amendment retroactively.
¶ 16 The trial court ruled that former RCW 13.04.030 was unambiguous and, under former RCW 13.04.030, the adult court had jurisdiction over Ramirez. Accordingly, the trial court denied Ramirez's motions to withdraw his plea or, in the alternative, to grant him relief from judgment.
¶ 17 Ramirez appeals the trial court's denial of his motion to withdraw his guilty plea, revocation of his SSOSA, and imposition of his sentence.

ANALYSIS

I. Denial of Motion To Withdraw Guilty Plea
¶ 18 Relying on RCW 13.04.030(1)(e)(v), effective July 24, 2005, Ramirez contends that the trial court erred in denying his 2006 motion to withdraw his 2002 guilty plea to first degree child rape because: (1) he was under 16 years old when he committed the crime; (2) thus, the juvenile court should not have declined jurisdiction; (3) the adult court lacked subject matter jurisdiction to accept his guilty plea; and (4) therefore, his sentence is void. This argument fails.
¶ 19 Specifically, Ramirez argues that Laws of 2005, chapter 290, § 1, which amended RCW 13.04.030(1)(e)(v), was curative and, therefore, it retroactively provides exclusive adult court jurisdiction over only those juveniles who were 16 or 17 years old "on the date the alleged offense is committed," here, first degree child rape. See RCW 13.04.03(1)(e)(v). Ramirez asserts that the 2005 amendment was curative because the Legislature intended to reverse the Court's misinterpretation of the previous version of the statute in Salavea. Ramirez is incorrect.
¶ 20 It is well-established that the Legislature may overrule our decisions by amending a statute and applying it prospectively. State v. Varga, 151 Wash.2d 179, 191, 86 P.3d 139 (2004). But we will apply a statutory amendment retroactively only "if *66 constitutionally permissible under the circumstances, when it is (1) intended by the Legislature to apply retroactively, (2) curative in that it clarifies or technically corrects ambiguous statutory language, or (3) remedial in nature." Barstad v. Stewart Title Guar. Co., Inc., 145 Wash.2d 528, 536-37, 39 P.3d 984 (2002). None of these three prerequisites exist here.
¶ 21 First, the Legislature did not include a retroactivity clause in House Bill 2064; nor did it otherwise indicate any intent to apply the amendment retroactively.[7] Second, although Ramirez argues that the 2005 amendment was curative and the legislative history describes the bill as "clarifying," the Supreme Court's characterization of the statute as unambiguous,[8] before it was amended, controls.[9] We will not apply a curative amendment retroactively "if it contravenes a judicial construction of the statute that is clarified or technically corrected because of separation of powers considerations." 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wash.2d 566, 584, 146 P.3d 423 (2006).
¶ 22 Thus, although our Legislature adopted the 2005 amendment in response to the Supreme Court's holding in Salavea,[10] this legislative reaction does not automatically render the amendment curative and retroactive, especially in light of our Supreme Court's holding that the existing statute was clear and unambiguous. Under Salavea, the 2005 legislative amendment changed the earlier, non-ambiguous version of RCW 13.04.030(1)(e)(v); therefore, as a matter of law, the amendment was not simply a "clarification" of the statute. See Overton v. Econ. *67 Assistance Auth., 96 Wash.2d 552, 557, 637 P.2d 652 (1981) (an amendment changes an unambiguous statute and legislative clarifications interpret ambiguous statutes); Johnson v. Morris, 87 Wash.2d 922, 926, 557 P.2d 1299 (1976) (we presume a legislative enactment is an amendment rather than a clarification of existing law unless the surrounding circumstances indicate legislative intent only to interpret the act).
¶ 23 We hold, therefore, that because the 2005 legislative change to RCW 13.04.030(1)(e)(v) was not a clarification of existing law, it was not a curative amendment, it does not apply retroactively, and the juvenile court properly declined jurisdiction.[11]See Barstad, 145 Wash.2d at 537, 39 P.3d 984.

II. SSOSA Revocation
¶ 24 Ramirez next argues that the trial court abused its discretion when it revoked his SSOSA sentence. Ramirez asserts that the trial court did not give great weight to the victims' mother's opinion concerning whether Ramirez's SSOSA sentence should be revoked, which he contends RCW 9.94A.670(4) requires. This argument also fails.

A. Standards of Review
¶ 25 We review revocation of a SSOSA sentence for abuse of trial court discretion.[12] The State need not prove that Ramirez violated his SSOSA conditions "beyond a reasonable doubt but only must `reasonably satisfy' the court the breach of condition occurred." State v. Badger, 64 Wash. App. 904, 908, 827 P.2d 318 (1992).
¶ 26 We review issues of statutory interpretation de novo. State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007). "[W]e do not construe plain and unambiguous statutes." State v. Nolan, 141 Wash.2d 620, 625, 8 P.3d 300 (2000). And if the statute is unambiguous, then it will "be enforced in accordance with its plain meaning." Armendariz, 160 Wash.2d at 110, 156 P.3d 201.

B. No Abuse of Discretion
¶ 27 Ramirez does not contest that he breached his SSOSA conditions. Instead, he argues that the trial court abused its discretion in revoking his SSOSA because it did not give great weight to his victims' mother's statement that the trial court should not revoke it. He argues that because RCW 9.94A.670(4) requires the trial court to consider the victim's opinion about whether the offender should receive a treatment disposition, the statute also requires the trial court to consider the victim's opinion when revoking a suspended sentence under RCW 9.94A.670(10).[13] We disagree.
¶ 28 While Ramirez is correct that in sentencing a defendant to a treatment disposition, *68 the trial court must consider the victim's opinion about whether the offender should receive the treatment disposition, he is not correct, however, to the extent that he asserts this statutory requirement applies to SSOSA revocation procedures as well.
¶ 29 Former RCW 9.94A.670(10) (2002)[14] provided:
The court may revoke the suspended sentence at any time during the period of community custody and order execution of the sentence if: (a) The offender violates the conditions of the suspended sentence, or (b) the court finds that the offender is failing to make satisfactory progress in treatment. All confinement time served during the period of community custody shall be credited to the offender if the suspended sentence is revoked.
Under this statute's plain language, the trial court must consider only whether the offender violated the SSOSA conditions or whether the offender failed to make satisfactory treatment progress. Ramirez cites no authority for his position that the trial court also must consider the victim's opinion, nor have we found any.
¶ 30 On the contrary, as our Supreme Court pointed out, "Unlike at a sentencing hearing, law enforcement representatives and victims are neither present nor invited to speak at a SSOSA revocation hearing. Compare RCW 9.94A.670(4) with RCW 9.94A.670(10)." State v. Canfield, 154 Wash.2d 698, 705, 116 P.3d 391 (2005). Because this statute is unambiguous, we enforce it in accordance with its plain meaning. Armendariz, 160 Wash.2d at 110, 156 P.3d 201. Although here the trial court took testimony from the victims' mother, it was not required to give it "great weight" under the statute's plain meaning, contrary to Ramirez's contention. And this is the sole ground on which Ramirez argues that the trial court abused its discretion.
¶ 31 Furthermore, the record does not show that the trial court abused its discretion in revoking Ramirez's SSOSA. The trial court heard testimony from numerous CCOs and Ramirez's treatment providers that Ramirez violated his SSOSA. Ramirez offered testimony from only his mother and Connell in an attempt to explain two of the ten alleged violations. The trial court determined that (1) Ramirez committed eight violations of his SSOSA conditions; (2) he had pictures of nude women on his mobile phone, which were additional risk factors; and (3) he began re-offending immediately after his release from an earlier incarceration arising from four other SSOSA violations.
¶ 32 Accordingly, we hold that the trial court did not abuse its discretion by revoking Ramirez's SSOSA.
¶ 33 Affirmed.
We concur: BRIDGEWATER, P.J., and QUINN-BRINTNALL, J.
NOTES
[1] See former RCW 9.94A.670 (2002).
[2] Ramirez was born on September 19, 1986.
[3] RCW 9A.44.073 provides:

A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim.
[4] Former RCW 13.04.030(1)(e)(v) (1998), amended by Laws of 2000, ch. 135, § 2, provided:

(1) Except as provided in this section, the juvenile courts in this state shall have exclusive original jurisdiction over all proceedings:
. . . .
(e) Relating to juveniles alleged or found to have committed offenses, traffic or civil infractions, or violations as provided in RCW 13.40.020 through 13.40.230, unless:
. . . .
(v) The juvenile is sixteen or seventeen years old and the alleged offense is:
. . . .
(C) . . . rape of a child in the first degree . . . committed on or after July 1, 1997.
Laws of 2000, ch. 135, § 2 did not amend subsection (1) of RCW 13.04.030 and therefore, we cite to the 1998 version of the statute.
[5] See In re Boot, 130 Wash.2d 553, 925 P.2d 964 (1996); State v. Calderon, 102 Wash.2d 348, 684 P.2d 1293 (1984).
[6] CrR 7.8(b)(4)-(5) provides:

On motion and upon such terms as are just, the court may relieve a party from a final judgment, order, or proceeding for the following reasons:
. . . .
(4) The judgment is void; or
(5) Any other reason justifying relief from the operation of the judgment.
[7] In determining whether a statute applies retroactively, we may examine its "purpose and language, legislative history, and legislative bill reports." Barstad, 145 Wash.2d at 537, 39 P.3d 984 (footnotes omitted).

Ramirez does not cite a retroactivity clause, nor does he cite legislative history indicating that the Legislature intended the amendments to apply retroactively. Rather he argues that the Legislature intended the amendments to clarify the Legislature's original intent, and thus, the amendments must be retroactive.
We acknowledge that the Final Bill Report for House Bill 2064 characterized the 2005 amendment as "clarifying," and the Senate bill report summarizes the testimony in support as follows: "The bill reflects the original intent of the legislature and corrects the courts' misinterpretation of the law." Final Legislative Report, 59th Leg., at 1 (Wash.2005); S.B. Rep. on H.B.2064, at 1, 59th Leg., Reg. Sess. (Wash.2005). This statement, however, is not conclusive authority that the Legislature intended the bill to be curative, clarifying, or retroactive. On the contrary, generally, we will not turn to the comments of a single legislator to establish legislative history. In re Bankruptcy of F.D. Processing, Inc., 119 Wash.2d 452, 461, 832 P.2d 1303 (1992).
Moreover, even when the Legislature specifically enacts a law to "correct" what it deems to be an erroneous judicial interpretation of a statute, the new legislation does not thereby reach back in time to "correct" the previous law when the court interpreted the previous law as unambiguous. Rather, the new legislation prospectively amends the statute to escape the court's erroneous interpretation of its predecessor version. See 1000 Virginia Ltd. P'ship. v. Vertecs Corp., 158 Wash.2d 566, 584, 146 P.3d 423 (2006); State v. Dunaway, 109 Wash.2d 207, 216 n. 6, 743 P.2d 1237 (1987), review denied sub nom., State v. Franklin, 114 Wash.2d 1004, 788 P.2d 1078 (1990).
[8] In Salavea, our Supreme Court held that former RCW 13.04.030(1)(e)(v) was clear and unambiguous:

[I]f the legislature wanted the age element in RCW 13.04.030(1)(e)(v) to refer to age at the time of commission, it could have used language indicating this. As we have previously held, the court "cannot add words or clauses to an unambiguous statute when the legislature has chosen not to include that language." We . . . find the statute unambiguously refers to age at the time of the proceedings.
Salavea, 151 Wash.2d at 144, 86 P.3d 125 (quoting State v. Delgado, 148 Wash.2d 723, 727, 63 P.3d 792 (2003)) (footnote omitted).
[9] Moreover, we disfavor retroactive application of a statute absent legislative direction to the contrary. See F.D. Processing, 119 Wash.2d at 460, 832 P.2d 1303; Barstad, 145 Wash.2d at 536-37, 39 P.3d 984.
[10] The Final Bill Report for House Bill 2064 states:

In a recent Washington Supreme Court case, State v. Salavea, the court found that whether an offense may be transferred to adult court is determined by the date the prosecutor files the charges rather than the date of the offense. The court looked at the statute and found that if the Legislature intended that the determination of whether to automatically transfer a case to adult court be based on the age of the offender at the time the offense took place, it could have used language to indicate this intent.
Final Legislative Report, 59th Leg., at 1 (Wash. 2005).
[11] Even if we were to hold that the 2005 amendment was "clarifying" or "curative," it could not apply retroactively without improperly contravening the Supreme Court's judicial construction of the statute in Salavea. See 1000 Virginia Ltd. P'ship, 158 Wash.2d at 584, 146 P.3d 423; Dunaway, 109 Wash.2d at 216 n. 6, 743 P.2d 1237.
[12] See State v. Badger, 64 Wash.App. 904, 908, 827 P.2d 318 (1992) (trial court has discretion to revoke suspended sentence); State v. Osman, 157 Wash.2d 474, 482, 139 P.3d 334 (2006) ("The decision to impose a SSOSA is entirely within the trial court's discretion.").
[13] Ramirez argues that the trial court must give great weight to the victim's opinion, but he cites current RCW 9.94A.670(4) for support. "We have repeatedly held that sentencing courts must `look to the statute in effect at the time [the defendant] committed the [current] crimes' when determining defendants' sentences." Varga, 151 Wash.2d at 191, 86 P.3d 139 (citing Delgado, 148 Wash.2d at 726, 63 P.3d 792). The statute in effect at the time Ramirez committed first degree child rape, former RCW 9.94A.670(4) (2002), amended by Laws of 2004, ch. 176, § 4 and Laws of 2006, ch. 133 § 1, provided that the trial court only need consider the victim's opinion.

Former RCW 9.94A.670(4) provided:
After receipt of the reports, the court shall consider whether the offender and the community will benefit from use of this alternative and consider the victim's opinion whether the offender should receive a treatment disposition under this section. If the court determines that this alternative is appropriate, the court shall then impose a sentence or, pursuant to RCW 9.94A.712, a minimum term of sentence, within the standard sentence range. If the sentence imposed is less than eleven years of confinement, the court may suspend the execution of the sentence and impose the following conditions of suspension:. . . .
[14] The State charged Ramirez for acts occurring between January 1, 1998, and September 1, 2002. The Legislature amended the SSOSA statute many times during this time period. For example, effective July 1, 2001, the Legislature recodified the SSOSA statute from RCW 9.94A.120 to RCW 9.94A.670. See Laws of 2000, ch. 28, §§ 5, 20, 46. For purposes of this opinion, however, the amendments to this section were primarily technical in nature and did not affect the substance of the statute to which we cite.