# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47399-2-II |
| Respondent, | |
| v. | |
| RONALD JAMES SMITH, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Ronald J. Smith appeals the superior court's decision to revoke his sentence under the special sex offender superior alternative (SSOSA).  Smith argues that (1) the superior court abused its discretion when it revoked his SSOSA sentence and (2) the community custody condition prohibiting him from possessing or perusing pornography is unconstitutionally vague. Smith also claims ineffective assistance of counsel in his statement of additional grounds (SAG). We hold that the superior court did not abuse its discretion when it revoked Smith's SSOSA sentence.  We also hold that the community custody condition prohibiting him from perusing pornography is not unconstitutionally vague because the superior court properly delegated the determination of what constitutes pornography to Smith's treatment provider, and that his claim of ineffective assistance of counsel fails.  Thus, we affirm.

## FACTS

On February 5, 2010, Ronald Smith was charged with two counts of first degree rape of a child and two counts of first degree child molestation.  On June 11, Smith plead guilty to three

counts of first degree child molestation as a part of a plea agreement. As a part of his plea agreement, Smith agreed to the following conditions:

> 11. Obtain a Psychosexual Evaluation and comply with any recommended treatment by a certified Sexual Deviancy Counselor.
>
> . . .
>
> 14. Do not possess or peruse pornographic materials. Your Community Corrections Officer will consult with the identified Sexual Deviancy Treatment Provider to define pornographic material.
>
> . . .
>
> 16. Do not initiate, <u>or have in any way</u>, physical contact with children under the age of 18 for any reason.

Clerk's Papers (CP) at 30.

> Smith's psychosexual evaluation recommended that

> [he] should be prohibited from possessing, perusing and viewing pornographic stimuli in any medium. "Pornography" should be defined for him by the treatment provider. Specifics regarding this prohibition should be outlined by the treatment provider.

CP at 42.

On October 22, the superior court sentenced Smith to a total confinement of 130 months, with all but nine months suspended under SSOSA. The court also sentenced Smith to lifetime community custody and imposed the following conditions for the SSOSA sentence:

> I. The defendant shall attend and complete sexual deviancy [treatment]: [t]o be determined by the evaluator.
>
>> 1. The defendant shall follow all rules set forth by the treatment provider;
>>
>> 2. The defendant shall submit to quarterly polygraph examinations to monitor compliance with treatment conditions;
>>
>> 3. The defendant shall submit to periodic plethysmograph examinations;
>>
>> 4. The defendant shall not peruse pornography, which shall be defined by the treatment provider

CP at 61.

The superior court reviewed Smith's sentence four times between July 2011 and July 2013, and found Smith to be in compliance with the conditions of his sentence. Smith's psychologist provided quarterly reports to the court and stated that Smith was making average or good progress in his treatment.

On December 19, 2013, Smith completed the integrated cognitive behavior change program required under the conditions of his SSOSA sentence. On February 13, 2014, Smith's treatment provider made the following recommendations based on meeting with Karen Wheeler, Smith's sister:

> It is not recommended that Mr. Smith have contact with the victim in his offense. Mr. Smith appears ready to have supervised contact with other minors. . . . Contact with minors could occur in Ms. Wheeler's home or locations in the community, and she should maintain visual supervision of Mr. Smith whenever minors are nearby or have the potential to interact with him.

CP at 98.

The Department of Corrections (DOC) approved Wheeler to supervise Smith when he had contact with any minor children, in or outside the family. Wheeler and Smith confirmed that they understood the rules regarding supervision as stated on the supervisory documents:

> **General:**
> 1. The offender is never to be alone with minors.
> 2. The offender is never to be responsible for the supervision or the discipline of minors.
> 3. The offender is never to initiate physical contact with minors.
> 4. The offender is never to discuss issues of sexuality with minors.
> 5. The offender is not to present him/herself as wanting or needing care-taking or special affections from minors.
> 6. The use of alcohol or drugs is prohibited.

**Visits Outside the Home:**

1. The offender is not to be left alone with the child(ren). A Supervisor of Contact approved by DOC is to be present at all times.

2. The offender is not to discipline the minors. The Supervisor of Contact or a legal guardian other than the offender is responsible for determining appropriate discipline and administering rewards or punishment.

3. Any discussion of the sexual abuse between the offender and the minor will take place only in the treatment setting.

4. The offender will minimize physical contact with the child(ren) and will not initiate physical contact (i.e., hugs, hand-holding, etc.). The offender will not sit next to the child(ren) in the car, restaurants, etc.

5. The offender is not to be around the child(ren)'s friends.

6. The offender will not have any secrets with the child(ren).

7. No gift-giving to the child(ren) except through the Supervisor of Contact.

CP at 94.

The rules on the supervisory documents that stated the requirements for "home visits" and "overnight visits" were crossed out entirely, and both Wheeler and Smith signed the rules. CP at 94. Wheeler also met with Smith's treatment provider to discuss her role as a supervisor. During that discussion, Wheeler signed a statement that stated she "was informed that [she] must be able to see [Smith] at all times when children are present, or it is not supervision." CP at 97.

On January 15, 2015, the State petitioned for a hearing to determine Smith's noncompliance with the conditions of his SSOSA sentence. In its petition, the State alleged that Smith violated his court ordered conditions by having contact with minor children.

On February 4, Smith's community corrections officer (CCO) submitted a report to the superior court that included the following allegations:[1]

> Violation 1:
>
> Failing to comply with Court-ordered conditions by residing with a minor (P.R. DOB: 11/21/1997) at . . . Spanaway, WA 98387 between October 2014 and January 14, 2015.
>
> Violation 2:
>
> Failing to comply with Court-ordered conditions by having contact with a minor (A.J.L. DOB: 04/03/2003) on at least one occasion between April 2014 and June 2014 at . . . Spanaway, WA 98387.

CP at 90.

To support Violation 1, Smith's CCO reported that on January 14, the daughter of Smith's adult niece, a minor, was residing at the residence. Smith reported to his CCO that the minor had lived at the home "a couple of months" but insisted that he was not at home or he was in his room when the minor was in the home. CP at 91. When the CCO advised Smith and Wheeler that Smith was in violation, Wheeler stated that she was his chaperone.

To support Violation 2, Smith's CCO reported that Smith's neighbor and her minor daughter had spent an evening watching a movie with Wheeler and Smith sometime between April and June 2014. The neighbor reported that Smith was in the same room with her and her daughter for a period of time and then went to his own room. When confronted with the neighbor's report, Smith insistent that he was not at home or he was in his room or completely unaware of a minor

---

[1] Smith's CCO also reported a third violation for Smith's failure to comply with a court-ordered condition to "pay no less than $20.00 per month as agreed to the Pierce County Superior Court since March 2014." CP at 90. Smith stipulated to this violation and does not assign error to this issue, thus we do not address it. RAP 10.3(a)(4).

being in the home. Smith later admitted he attempted to deceive the DOC when he denied knowing that the neighbor's minor daughter was in his home for movie night.

On February 13, the State filed an amended petition for a hearing to determine Smith's noncompliance with the conditions of his SSOSA sentence. In its petition, the State alleged the same violations documented in the CCO's report.

On March 20, 2015, the superior court held a SSOSA revocation hearing. Smith stipulated to the alleged violations. At the hearing, the court considered Smith's regular polygraph tests and confirmed that the most recent polygraph test was conducted in June 2014. The court then considered the supervisory documents and Smith's attempts to deceive the DOC:

> THE COURT: We had this arrangement made for chaperoning. He was offered certain opportunities to have safety plans for other kinds of more expanded, if you will, contacts, declined those opportunities. He was not—he was not forthcoming with respect to his answers once all of this started to come to official attention.
>
> . . . .
>
> I have nothing that suggests that Mr. Smith wouldn't have sexual interest in such a young woman.
>
> I mean, given his age and given apparently the reason of wellness for a long time, I'm reluctant to slam him up for another ten years in jail, or thereabouts. But this is a serious thing and it seems to me that somewhere in the last year he just got the idea that none of this really mattered any more. He quit making the payments he was supposed to make. He stopped following the rules. To the extent they offered him additional stuff, he's like, hey, I got my chaperone deal and I'm fine with that and I don't care about the rest of it. That's the impression I'm getting. We're trying to keep him out of trouble because if he gets another one of these things, he's looking at life in prison.

Verbatim Report of Proceedings (VRP) (Mar. 30, 2015) at 14-16.

The superior court found that Smith committed the violations "based upon [his] stipulation and waiver of his right to confront witnesses at the revocation hearing." CP at 126. The superior court revoked Smith's SSOSA sentence and imposed a sentence of "130 m[onths], [with] credit

for 12 m[onths] in [Pierce County Jail], [and] any other credit to be calculated by [the] DOC." CP at 126. Smith appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a superior court's decision to revoke a SSOSA sentence for an abuse of discretion. *State v. McCormick*, 166 Wn.2d 689, 705-06, 213 P.3d 32 (2009). An abuse of discretion occurs only when the decision of the court is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *McCormick*, 166 Wn.2d at 706 (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

"'A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported in the record.'" *State v. Hampton*, 184 Wn.2d 656, 670, 361 P.3d 734 (2015) (internal quotation marks omitted) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003), *cert. denied*, 136 S. Ct. 1718 (2016)). "'A decision is manifestly unreasonable if the court . . . adopts a view that no reasonable person would take, and arrives at a decision outside the range of acceptable choices.'" *Hampton*, 184 Wn.2d at 670-71 (internal quotation marks omitted) (quoting *Rohrich*, 149 Wn.2d at 654). The imposition of an unconstitutional condition is manifestly unreasonable. *State v. Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059, (2010).

### II. REVOCATION OF THE SSOSA SENTENCE

Smith argues that the superior court abused its discretion when it revoked the SSOSA sentence rather than imposing probation sanctions without considering the treatment provider's letter, the supervisory documents, or Wheeler's statement that she believed it was okay for Smith to be around her 17-year-old daughter because she was his chaperone. We disagree.

A first-time sex offender may be eligible for a SSOSA sentence if he or she has been convicted of an eligible sex offense or resulting from a guilty plea, and as part of his or her plea of guilty, voluntarily and affirmatively admits that he or she committed all of the elements of the crime. RCW 9.94A.670(2)(a). If the offender is eligible for SSOSA and the sentence imposed is less than 11 years, the superior court may suspend the execution of the offender's sentence. RCW 9.94A.670(4).

"The court may revoke the suspended sentence at any time during the period of community custody and order execution of the sentence if . . . the offender violates the conditions of the suspended sentence." RCW 9.94A.670(11). The State need not prove that the defendant violated his or her SSOSA conditions "'beyond a reasonable doubt but only must reasonably satisfy the court the breach of condition occurred.'" *State v. Ramirez*, 140 Wn. App. 278, 290, 165 P.3d 61 (2007) (internal quotation marks omitted) (quoting *State v. Badger*, 64 Wn. App. 904, 908, 827 P.2d 318 (1992)).

Although Smith concedes that he violated his SSOSA sentence, he complains that the superior court failed to consider his treatment provider's letter, the supervisory documents, or Wheeler's statement. However, there is no indication in the record that the superior court did not consider all relevant information. Rather, the record shows that in revoking the SSOSA sentence, the superior court considered the treatment provider's letter, the supervisory documents, Wheeler's statement, Smith's polygraph results, and stated that "[Smith] was offered certain opportunities to have safety plans for other kinds of more expanded, if you will, contacts, declined those opportunities." VRP (Mar. 30, 2015) at 14. Smith does not provide any citation to the record to indicate that these documents were not included in the attachments provided to the court. Because

Smith violated the conditions of his SSOSA sentence, we hold that the superior court did not abuse its discretion when it revoked Smith's SSOSA sentence.

### III. COMMUNITY CUSTODY CONDITION

Smith argues that the community custody condition prohibiting him from possessing or perusing pornography as defined by the treatment provider, is unconstitutionally vague. We disagree.

The vagueness doctrine arises under the due process clauses in both the U.S. Constitution and our state constitution. U.S. CONST. amend. XIV, § 1; CONST. art. I, § 3. It has two purposes: (1) to provide the public with adequate notice of what conduct is proscribed and (2) to protect the public from arbitrary ad hoc enforcement. *State v. Sansone*, 127 Wn. App. 630, 638, 111 P.3d 1251 (2005). However, "'the constitution does not require impossible standards of specificity or mathematical certainty because some degree of vagueness is inherent in the use of our language.'" *Sansone*, 127 Wn. App. at 639 (internal quotation marks omitted) (quoting *State v. Riles*, 135 Wn.2d 326, 348, 957 P.2d 655 (1998)). A defendant's First Amendment right "'may be restricted if reasonably necessary to accomplish the essential needs of the state and public order.'" *State v. Bahl*, 164 Wn.2d 739, 757, 193 P.3d 678 (2008) (internal quotation marks omitted) (quoting *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993)). A superior court may impose "[c]rime-related prohibitions" as conditions of a sentence. RCW 9.94A.670(6)(a).

Conditions restricting accessing or possessing "pornography" are generally unconstitutionally vague. *Bahl*, 164 Wn.2d at 758. An unconstitutionally vague condition cannot be cured by allowing the probation officer an unfettered power of interpretation, as this would create one of the very problems against which the vagueness doctrine is meant to protect, i.e., the

delegation of "'basic policy matters to policemen . . . for resolution on an ad hoc and subjective basis.'" *Sansone*, 127 Wn. App. at 642 (alteration in original, internal quotation marks omitted) (quoting *United States v. Loy*, 237 F.3d 251, 266 (3rd Cir. 2001)).

In *Sansone*, Division One of this court held that the delegation to the defendant's CCO to define pornography was improper because "definition of pornography was not an administrative detail that could be properly delegated to the CCO." *Sansone*, 127 Wn. App. at 642. Specifically, the *Sansone* court held that delegation was improper because "there were several definitions of pornography given during the proceedings." *Sansone*, 127 Wn. App. at 642. The *Sansone* court highlighted that

> Sansone cannot ascertain if materials are pornographic without showing them to the probation officer to obtain a determination, which itself exposes him to risk of violation. This is illustrated by the fact that Sansone was detained and punished for having violated the condition that he not possess pornography, despite the fact that the State conceded at the hearing that the materials he had were not pornographic.

*Sansone*, 127 Wn. App. at 639.

The *Sansone* court did, however, state that delegation to a therapist as a part of treatment may be permissible:

> We note that our holding is limited to the circumstances at hand. A delegation would not necessarily be improper if Sansone were in treatment and the sentencing court had delegated to the therapist to decide what types of materials Sansone could have. In such a circumstance, the prohibition is not necessarily static—it is a prohibition that might change as the probationer's treatment progressed, and is thus best left to the discretion of the therapist.

*Sansone*, 127 Wn. App. at 643.

In *Bahl*, the defendant was convicted of second degree rape and first degree burglary, the court also imposed a mandatory life term of community custody, which required that Bahl was not to "possess or access pornographic materials, as directed by the supervising [CCO]" or "possess or control sexual stimulus material for [his] particular deviancy as defined by the supervising [CCO] and therapist except as provided for therapeutic purposes." *Bahl*, 164 Wn.2d at 743.

With respect to the condition that *Bahl* not possess or access pornographic materials, as directed by the supervising CCO, our supreme court reinforced the *Sansone* holding and stated that

> the restriction on accessing or possessing pornographic materials is unconstitutionally vague. The fact that the condition provides that Bahl's community corrections officer can direct what falls within the condition only makes the vagueness problem more apparent, since it virtually acknowledges that on its face it does not provide ascertainable standards for enforcement.

*Bahl*, 164 Wn.2d at 758. However, with respect to the condition that Bahl not possess or control sexual stimulus material for his particular deviancy as defined by the supervising CCO and therapist except as provided for therapeutic purposes, the *Bahl* court stated,

> The sexual stimulus material must be for his deviancy. The condition cannot identify materials that might be sexually stimulating for a deviancy when no deviancy has been diagnosed.

*Bahl*, 164 Wn.2d at 761.

Unlike the delegation to a CCO in *Sansone* and *Bahl*, the superior court here specifically delegated the determination of what constitutes pornography to Smith's treatment provider. The superior court specifically stated that the recommendation of Smith's psychosexual evaluation and stated that "[t]he defendant shall not peruse pornography, which shall be defined by the treatment provider." CP at 61. Thus, we hold that the community custody condition prohibiting him from

11

possessing or perusing pornography is not unconstitutionally vague because the superior court delegated the determination of what constitutes pornography to Smith's treatment provider.

## IV. STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Smith claims that he was not given a chance to defend himself and that his attorney did not call Smith's sister or niece as witnesses and thus, he claims ineffective assistance of counsel. His SAG claim fails.

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, Smith must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32–33, 246 P.3d 1260 (2011). Representation is deficient if after considering all the circumstances, the performance falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Grier*, 171 Wn.2d at 34.

As to his first claim that he was not given a chance to defend himself, Smith's claim fails because he relies on matters outside the record. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). As to his second claim, that his attorney intended to have certain witnesses but did not call them, Smith fails to show that but for his counsel's decision, the outcome of the revocation hearing would have been different. Thus, he fails to show prejudice, and his claims fails.

12

CONCLUSION

We hold that superior court did not abuse its discretion when it revoked Smith's SSOSA sentence and affirm. We also hold that the community custody condition prohibiting him from possessing or perusing pornography is not unconstitutionally vague because the superior court properly delegated the determination of what constitutes pornography to Smith's treatment provider, and that his claim of ineffective assistance of counsel fails.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, P.J.

MELNICK, J.