IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78532-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DEWITT, MARC JAMES, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 12, 2019 |

SCHINDLER, J. — Marc James Dewitt appeals the decision to revoke the "Special Sex Offender Sentencing Alternative" (SSOSA) suspended sentence. We affirm.

## FACTS

On March 3, 2012, 21-year-old Marc James Dewitt pulled the covers off a 7-year-old girl while she was sleeping, placed his hand inside of her clothing, and rubbed her vagina. Dewitt admitted he was sexually aroused by touching the vagina of a 7-year-old girl.

The State charged Dewitt with attempted child molestation in the first degree in violation of RCW 9A.28.020 and RCW 9A.44.083.

Dewitt pleaded guilty. Before pleading guilty, Dewitt had completed a SSOSA evaluation. The evaluation recommended community based treatment with a sexual offender treatment program (SOTP) provider.

The Department of Corrections (DOC) submitted a presentence investigation assessment. DOC recommended a SSOSA, provided Dewitt "fully engages in the associated treatment process," "complies with the requirements of treatment and community custody," and is subject to imposition of a number of conditions. With an offender score of 0, the standard range was 51 to 68 months.

At sentencing, the court exercised its discretion to impose a SSOSA. The court sentenced Dewitt to 51 months suspended and compliance with conditions. The judgment and sentence states:

> Revocation of Suspended Sentence. At any time during the period of community custody, if the defendant violates the conditions of the suspended sentence or the court finds that the defendant is failing to make satisfactory progress in treatment, the court may revoke the suspended sentence and order execution of the sentence, with credit for any confinement served during the period of community custody. RCW 9.94A.670.

The community custody conditions state:

> The defendant shall comply with all rules, regulations and requirements of DOC and shall perform affirmative acts as required by DOC to confirm compliance with the orders of the court. The defendant shall abide by any additional conditions of community custody imposed by DOC under RCW 9.94A.704 and .706.

Additional conditions of community custody include:

> Participate and make progress in sexual deviancy treatment with a certified provider. Follow all conditions outlined in your treatment contract. Do not change therapists without advanced permission of the supervising Community Corrections Officer.

Another condition also prohibits Dewitt from possessing or accessing "depictions of minors engaged in sexually explicit conduct."

Dewitt entered into a contract with SOTP provider Stephanie Overton at Family First Family Services LLC and agreed to comply with a number of conditions, including

2

that he not "engage in the use of or possess pornography or sexually explicit materials in any form. This includes but is not limited to the Internet, magazines, books, movies, stores, and establishments."

Dewitt repeatedly violated conditions of his SSOSA and treatment plan. For example, in August 2014, DOC issued a notice of violation alleging Dewitt violated the conditions of supervision by "[h]aving contact with a minor on or about 8/10/2014." In March 2016, DOC issued a notice of violation alleging Dewitt violated the following conditions:

> (1) Failing to comply with sexual deviancy treatment by viewing pornographic videos and pictures in violation of his treatment contract in or around February 2016 in King County, WA; (2) Failing to comply with sexual deviancy treatment by accessing the Internet without CCO[1] Isaacs' permission in violation of his treatment contract in or around February 2016 in King County, WA; and (3) failing to comply with sexual deviancy treatment by consuming marijuana in violation of his treatment contract on or about 3/10/2016 in King County, WA.

The State requested the court modify or, in the alternative, revoke Dewitt's SSOSA. Dewitt argued the pornography condition in his treatment contract was unconstitutionally vague. The court found Dewitt violated the terms of his treatment contract with Overton, accessed the Internet without his CCO's permission, and consumed marijuana in violation of his treatment contract. The court entered an order modifying the SSOSA judgment and sentence. The April 11, 2016 order states:

> The sentence previously entered in the above entitled matter, including any previous modifications, is still in effect but MODIFIED in the following manner:
> Shall comply with the conditions as set forth by Ms. Overton in her letter dated April of 2016 including a chemical dependency & psychological eval[uation]. Also:

---

[1] Community corrections officer.

(1) No use, possession, or viewing of sexually explicit conduct as defined in RCW 9.68A.011. (2) No use of marijuana unless prescribed by a treatment provider.

Confinement is IMPOSED. The defendant shall serve 28 days of . . . confinement in the Snohomish County Jail.

The court imposed a sentence of credit for time served.

In January 2017, Dewitt stipulated to not complying with sex offender treatment. The notice of violation states:

On 1/4/2017, Mr. Dewitt was addressed with a Court Jurisdiction Only Notice of Violations/Stipulated Agreement for (1) Failing to comply with Sex Offender Treatment by accessing the [I]nternet without the approval of the treatment provider or Community Corrections Officer approximately four times between 6/1/2016 and 6/30/2016; and (2) Failing to comply with Sex Offender Treatment by engaging in the use of pornography on or about 7/4/2016.

Dewitt agreed to attend and complete cognitive therapy sessions.

On October 10, 2017, Dewitt stipulated to violating the conditions of his SSOSA by failing to comply with sexual deviancy treatment when he used another individual's computer. Dewitt agreed to increase SOTP therapy sessions to every week for three months as a sanction.

On December 28, 2017, Overton terminated Dewitt from the SOTP. At the hearing on March 16, 2018, the court found Dewitt violated the SSOSA conditions. The court ordered Dewitt to participate in SOTP therapy sessions with Randy Green and imposed 23 days confinement with credit for time served.

On March 18, Dewitt entered into an SOTP contract with Green. Dewitt agreed to a number of conditions, including that he "must not view or possess pornography and erotic material. This includes sexually explicit computer or Internet images."

On May 3, DOC issued a notice of violation. The notice of violation alleged that on March 28, 2018, Dewitt told his CCO that he watched an anime[2] movie with nudity in it. The CCO told Dewitt that "he was to not use the [I]nternet at all." During a polygraph examination on April 25, Dewitt "admitted that he was aware he was not supposed to use the [I]nternet, but has done so daily, since given the verbal directive on 3/28/2018." Dewitt also admitted that he "viewed pornography on other people's computers approximately 50 times since his last polygraph" in October 2017. DOC found pornography on Dewitt's cell phone with titles such as, "Real Defloration Porn Video," "Teens Virgin First Time," and "Blonde Pigtailed Virgins." The notice of violation states that based on this evidence, "[c]learly Mr. Dewitt's viewing of pornographic materials on his phone was contrary to his SOTP treatment contact with Randy Green as well as using the [I]nternet without approval from his treatment provider."

The notice of violation also alleged Dewitt had "made little to no progress in SOTP," "gives the impression to have no goal oriented behaviors or motivation," and "appears to be in total[ ] noncompliance with his SOTP treatment."

The State filed a petition to revoke Dewitt's SSOSA. The State specifically alleged Dewitt violated the following conditions:

1. Failing to follow a Community Corrections Officer's verbal or written directive since on or about March 28, 2018;
2. Failing to comply with sexual deviancy treatment by viewing pornographic videos in violation of his treatment contract on or about April 11, 2018; and,
3. Failing to comply with sexual deviancy treatment by accessing the [I]nternet without the approval of the treatment provider or

---

[2] "Anime" is defined as "a style of animation originating in Japan that is characterized by stark, colorful graphics depicting vibrant characters usually drawn with large eyes in action-filled plots often with fantastic or futuristic themes." MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/anime (last visited Nov. 5, 2019).

> Community Corrections Officer's permission in violation of his treatment contract since on or about March 28, 2018.

In response to the notice of violation and petition to revoke the SSOSA, Dewitt filed a report from Green. Green concedes Dewitt violated his treatment contract by viewing pornography. However, Green recommended continuing SOTP:

> Revocation of Marc's SSOSA agreement is being considered. Given the repeated nature of these violations, that would seem a reasonable conclusion. However, I am unable to support revocation at this time. . . .
>
> . . . [I]t is my position that he would be better served by enhanced services in the community that would provide him the extensive support he will require to successfully negotiate not only the stringent requirements of community supervision, but to also begin forward progress in life.

At the May 11 hearing on the motion to revoke Dewitt's SSOSA, the prosecutor emphasized the repeated violations and Dewitt's lack of corrective behavior. The prosecutor argued that given the crime Dewitt was convicted of, "this does cause . . . concern that he is not making any progress in his treatment . . . [a]s noted in the notice of violation."

The court revoked the SSOSA. The court found Dewitt repeatedly violated the SSOSA conditions. The court noted the "individuals involved have truly gone the extra mile to try to work with Mr. Dewitt" to no avail. The court found Dewitt committed the three alleged violations and "on an independent basis," given the "totality of this record," Dewitt failed to make satisfactory progress in treatment. The court stated, "Regardless if one views this action in terms of viewing these porn[ography] sites as a violation or not, it does raise anew serious concerns of whether Mr. Dewitt is making, in fact, satisfactory progress."

The court rejected the defense request to call Green as a witness to address whether Dewitt failed to make satisfactory progress. The court ruled that under RCW 9.94A.670(11)(b), it has "overarching authority" to find "an individual is not making satisfactory progress to ultimately decide that a SSOSA is no longer the appropriate option." Dewitt appeals the decision to revoke the SSOSA suspended sentence.

## ANALYSIS

### Due Process

Dewitt contends the court violated his right to due process by revoking the SSOSA. Dewitt asserts he did not have notice that the court would consider his progress in treatment at the revocation hearing.

We review alleged due process violations de novo. State v. Simpson, 136 Wn. App. 812, 816, 150 P.3d 1167 (2007). "The revocation of a suspended sentence is not a criminal proceeding." State v. Dahl, 139 Wn.2d 678, 683, 990 P.2d 396 (1999). In SSOSA revocation hearings, offenders are entitled to minimal due process rights afforded in probation or parole revocation hearings. Dahl, 139 Wn.2d at 683.

Minimal due process requires (a) written notice of the claimed violations, (b) disclosure to the defendant of the evidence against him, (c) the opportunity to be heard in person and to present witnesses and documentary evidence, (d) the right to confront and cross-examine witnesses (unless there is good cause for not allowing confrontation), (e) a neutral and detached hearing body, and (f) a written statement by the court as to the evidence relied upon and the reasons for the revocation. Morrissey v. Brewer, 408 U.S. 471, 488-89, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). "Courts have limited the right to confrontation afforded during revocation proceedings by admitting

7

substitutes for live testimony, such as reports, affidavits and documentary evidence." Dahl, 139 Wn.2d at 686.[3]

The court found that under RCW 9.94A.670(11)(b), Dewitt failed to make satisfactory progress in treatment based on the facts contained in the notice of violation. Dewitt contends that because the notice did not explicitly seek revocation based on unsatisfactory progress in treatment, Dewitt was not afforded his due process right to notice. We disagree.

The court may revoke a SSOSA sentence at any time if there is sufficient proof to reasonably satisfy the court that "(a) [t]he offender violate[d] the conditions of the suspended sentence, or (b) the court finds that the offender is failing to make satisfactory progress in treatment." RCW 9.94A.670(11); State v. McCormick, 166 Wn.2d 689, 705, 213 P.3d 32 (2009); State v. Miller, 180 Wn. App. 413, 416, 325 P.3d 230 (2014); State v. Ramirez, 140 Wn. App. 278, 291-92, 165 P.3d 61 (2007).

In addition to the three violations, the notice of violation describes a lengthy history of noncompliance with treatment requirements. The notice also alleges Dewitt has made "little to no progress" in treatment and "appears to be in total[ ] noncompliance with his SOTP treatment."

The uncontroverted evidence shows Dewitt committed the three alleged violations. The record shows the court found that the violations, coupled with Dewitt's

---

[3] Dewitt cites the civil commitment case In re Cross, 99 Wn.2d 373, 382-85, 662 P.2d 828 (1983), to argue the State must provide written notice of all alternative grounds on which it seeks to revoke a SSOSA. Dewitt contends if he had adequate notice his treatment progress was at issue, he would have called Green as a witness. Cross is inapposite. However, we note an offender's due process rights are not violated where, as here, documentary evidence is presented in lieu of live testimony in a revocation proceeding. Dahl, 139 Wn.2d at 686.

failing to make progress in treatment and his lengthy history of violating conditions, justified the decision to revoke the SSOSA under RCW 9.94A.670(11)(b):

> [T]he Court is finding not only the specific violations but also this overarching finding which is kind of implicit in I think the violations that were asserted, but the Court is finding pursuant to statute that the Court ultimately concludes in looking at the totality of these circumstances that the offender is failing to make satisfactory progress in treatment.

Further, the judgment and sentence unambiguously informed Dewitt that if "[a]t any time during the period of community custody" he "violates the conditions of the suspended sentence or the court finds" he "is failing to make satisfactory progress in treatment," the court "may revoke the suspended sentence and order execution of the sentence, with credit for any confinement served during the period of community custody. RCW 9.94A.670."

The notice of violation adequately informed Dewitt that he was not making satisfactory progress in treatment.

<u>"Sexually Explicit Conduct" Condition</u>

The court found Dewitt violated the community custody condition that prohibits him from possessing or viewing "sexually explicit conduct as defined in RCW 9.68A.011." Dewitt claims the court abused its discretion in revoking his SSOSA for violating the sexually explicit conduct condition because the condition is unconstitutionally vague.

We review a court's decision to revoke a SSOSA suspended sentence for abuse of discretion. <u>State v. Badger</u>, 64 Wn. App. 904, 908, 827 P.2d 318 (1992). "A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds." <u>State v. Partee</u>, 141 Wn. App. 355, 361, 170 P.3d 60 (2007). A

9

court exceeds its authority when it sanctions a defendant for the violation of a condition not imposed. State v. Johnson, 184 Wn. App. 777, 779, 340 P.3d 230 (2014). We review the trial court's findings of fact for substantial evidence. Miller, 180 Wn. App. at 425. Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise. Miller, 180 Wn. App. at 425. We treat unchallenged findings as verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

"The Fourteenth Amendment to the United States Constitution along with article I, section 3 of the Washington State Constitution require that citizens be afforded fair warning of proscribed conduct." State v. Hai Minh Nguyen, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). A community custody condition is unconstitutionally vague if (1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement. State v. Bahl, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008).

When determining whether challenged language is sufficiently definite to provide fair warning, the court must read the language in context and give it a "sensible, meaningful, and practical interpretation." City of Spokane v. Douglass, 115 Wn.2d 171, 180, 795 P.2d 693 (1990). " '[A] community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.' " State v. Sanchez Valencia, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010)[4] (quoting State v. Sanchez Valencia, 148 Wn. App. 302, 321, 198 P.3d 1065 (2009), rev'd by 169 Wn.2d 782).

---

[4] Internal quotation marks omitted.

" '[I]mpossible standards of specificity' or 'mathematical certainty' are not required" to avoid a finding of unconstitutional vagueness "because some degree of vagueness is inherent in the use of language." State v. Halstien, 122 Wn.2d 109, 118, 857 P.2d 270 (1993) (citing City of Seattle v. Eze, 111 Wn.2d 22, 26-27, 759 P.2d 366 (1988); Haley v. Med. Disciplinary Bd., 117 Wn.2d 720, 740, 818 P.2d 1062 (1991)).

We presume a statute is constitutional, and Dewitt bears the heavy burden of proving unconstitutionality beyond a reasonable doubt. State v. Myles, 127 Wn.2d 807, 812, 903 P.2d 979 (1995). A community custody condition that implicates material protected under the First Amendment to the United States Constitution is held to a stricter standard of definiteness to avoid a "chilling effect" on the exercise of First Amendment rights. Bahl, 164 Wn.2d at 753.

Here, the community custody condition prohibiting Dewitt from possessing or viewing, in particular, simulated sexually explicit conduct as defined in RCW 9.68A.011(4) is not unconstitutionally vague. The condition is narrowly defined by citing a specific statute that notifies an ordinary person of what behavior is proscribed. RCW 9.68A.011(4) defines actual or simulated "sexually explicit conduct":

> "Sexually explicit conduct" means actual or simulated:
> (a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals;
> (b) Penetration of the vagina or rectum by any object;
> (c) Masturbation;
> (d) Sadomasochistic abuse;
> (e) Defecation or urination for the purpose of sexual stimulation of the viewer;
> (f) Depiction of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer. For the purposes of this subsection (4)(f), it is not necessary that the minor know that he or she is participating in the described conduct, or any aspect of it; and

11

(g) Touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer.

The statutory definition of simulated "sexually explicit conduct" provides substantial direction as to what falls within the condition's scope, such as certain qualifying behaviors, and therefore the condition is not unconstitutionally vague.

The case Dewitt cites, State v. Padilla, 190 Wn.2d 672, 416 P.3d 712 (2018), is distinguishable. In Padilla, the condition prohibiting access and possession of pornographic materials "include[d] a definition of the term 'pornographic materials' as 'images of sexual intercourse, simulated or real, masturbation, or the display of intimate body parts.' " Padilla, 190 Wn.2d at 678-79. The Washington Supreme Court agreed that the prohibition against viewing depictions of "simulated" sexual intercourse as defined in "pornographic materials" would unnecessarily encompass movies and television shows not created for the sole purpose of sexual gratification, "such as Game of Thrones." Padilla, 190 Wn.2d at 679, 681.

Unlike in Padilla, RCW 9.68A.011(4) is a narrow and more precise definition that eliminates the concerns expressed by the court in Padilla. See also State v. Alcocer, 2 Wn. App. 2d 918, 922, 413 P.3d 1033 (2018) ("remand for the court to change the restriction to limit use or possession of materials depicting 'sexually explicit conduct' as defined in RCW 9.68A.011(4)"), review denied, 192 Wn.2d 1017, 433 P.3d 814 (2019), abrogated on other grounds by State v. Johnson, 4 Wn. App. 2d 352, 421 P.3d 969, review denied, 192 Wn.2d 1003, 430 P.3d 260 (2018).[5]

---

[5] We also note the record shows Dewitt was able to identify what qualified as "simulated" sexually explicit conduct.

RCW 9.68A.011(4) is not unconstitutionally vague and provides substantial guidance about what falls within its scope. The court did not abuse its discretion in finding Dewitt violated the condition that prohibits him from possessing or viewing simulated sexually explicit conduct as defined by RCW 9.68A.011(4).

<u>Treatment Conditions</u>

Dewitt challenges the court's finding that he "[f]ail[ed] to comply with sexual deviancy treatment by accessing the [I]nternet without the approval of the treatment provider or Community Corrections Officer's permission in violation of his treatment contract since on or about March 28, 2018." Dewitt asserts the judgment and sentence does not require compliance with SOTP conditions. The judgment and sentence does not support his assertion.

The judgment and sentence states Dewitt shall "comply with all rules, regulations and requirements of DOC and shall perform affirmative acts as required by DOC to confirm compliance with the orders of the court." The treatment contract forbids Dewitt from viewing or possessing pornography or erotic material, including "sexually explicit computer or Internet images." The treatment contract requires "[a]dherence to additional rules [that] may be required by treatment provider or community corrections officer as determined necessary for community safety."

The notice of violation alleged Dewitt failed "to comply with sexual deviancy treatment by accessing the [I]nternet without the approval of the treatment provider or Community Corrections Officer's permission in violation of his treatment contract since on or about 3/28/2018." There is no dispute Dewitt watched the anime with nudity movie on his cell phone. Dewitt admitted the movie had nudity. The uncontroverted

record establishes Dewitt did not follow the CCO directive on March 28, 2018 not to access the Internet in violation of the judgment and sentence and the treatment contract conditions.

We affirm the decision to revoke the SSOSA suspended sentence.

Schindler, J.

WE CONCUR:

Andrus, J.

Appelwick, C.J.